You know, it was lodged on appeal. We've got the merits here, but in the past few days, we've had this motion filed by MTC to remand, etc. First was the motion to continue, which we denied to put this off for prudential reasons, and so these matters were carried over. So that was not granted, but allowance was given to file response to the motion that was filed, 11th hour, blahdy blahdy. So we got that on yesterday. Then yesterday, we got a motion from Lamar wanting attorney's fees and costs and so on and so forth. So since the case was lodged, we've got these other matters. So suffice to say, because of the imminency of oral argument, these matters were carried with the case to be dealt with while y'all are front and center, you know, here. So we've got obviously a pivotal motion to remand, to go back down, depending on what happens with that. Perhaps we don't have to get to the merits, but that probably needs to be a starting point. We've got this motion about the fees. I know that there may not have been an opportunity to file a response to that because it just was filed, but we can handle that. So the point is, from where I'm standing, we need to deal with this motion as part of your arguments, and we'll deal with whatever else we may need to deal with. But the point I really want to say is we're dealing with all this with these three judges, not another three judges, to hear all of that. So let's get with it. You're up, Mr. Herbert. Your Honor, do you want me to address the jurisdictional issue as part of my main argument? Yeah, that's what I'm trying to say. I mean, that was all filed, you know, after this case appeal. You know, if we don't have jurisdiction, we're never going to get to the merits. And, you know, we've got that file. You want to continue to brief it, and I denied all that. So it's here. So it's front and center. Jurisdiction, you know, we have to notice our jurisdiction. It's not waivable. You know all the basic principles. So go for it. Okay. Your Honor, I'm Mark Herbert, attorney for Lamar. I call him Lamar Aldor, Lamar Corporation, and may it please the court. I'll start with a jurisdictional motion and my response to that, even though we did file a response yesterday. Then I will get into the merits of the appeal. Our brief speaks for itself. I'm not going to stand here and dispute the cases citing the motion of remand. All right, we'll cut to the chase then. All right, you filed your response yesterday. The front part of it says, you know, they said there was jurisdiction. They lulled us along. Now at the last minute, they say there's not. Now you know, and I know, that you can't consent to jurisdiction. So it kind of doesn't matter in some ways whether what you say is true or not, but the nub is whether we have jurisdiction or not, putting aside whether, you know, what they did. We got it. We read your response, but you got to convince us that we have jurisdiction, diversity or subject matter jurisdiction. Not whether they acquiesced in it, therefore we ought to keep it, or they didn't, weren't in good faith and all that stuff. The court can note jurisdiction on its own, we have a duty to do that. So we got to be convinced that we have jurisdiction here in this case, regardless to the fact that it's raised at the 11th hour. So that needs to be the core. Judge Girola addressed some stuff about diversity, wanting to satisfy with Lamar. Lamar is incorporated in Delaware. Then there was a notion that, you know, it's in Louisiana, so we had diversity with Mississippi. Then there was a matter about there being federal jurisdiction under Taken's claim or something, but that was all dismissed. So the point is, hit the point on whether we have a jurisdictional nexus here that allows us to get to the merits. I will do that. Yes, you have subject matter jurisdiction. You always have. There's two lines of argument that come out of the cases, including the cases argued by the MTC. One is MTC, an independent body corporate and not an alter ego of the state. MTC relies on Moore versus the county of Alameda. It's a Supreme Court decision. And the trade of grain versus Mississippi State Court Authority case, district court opinion of Judge Russell. Those cite the criteria for determining independent bodies. I think they give six factors. In fact, the Moore case found jurisdiction. You don't have to meet them all, but they're laid out. Judge Russell gives an excellent discussion of those. Lamar showed in our brief 14 powers of the MTC, which show they're a subject, they are independent body and thus not a alter ego of the state. But there are four I think are most important. Number one, they're run by elected by three elected members of the commission and their website argues they are represent the electorate. They don't represent the governor of Mississippi or the legislature. They are elected officials. I don't know of any other commissions. There may be wrong on that. The public agencies are run by independently elected board. They can be sued and be sued. They can negotiate its own contracts. They have the power of eminent domain, which I think is very important. And there's others. As I looked at this, the statutes of the power of the agency is runs from 65 11 65 1 503. At least Judge Russell's decision in the tragic gain case, though, says the final factor. This is the second point for jurisdiction, which subsumes the others is sovereign immunity. If they have sovereign immunity, then they're not subject to jurisdiction. Indeed, Mr Herbert, Mr Herbert, let me ask you this. You refer to Judge Russell's opinion several times, and I don't have the briefing in front of There was a Fifth Circuit opinion and try to grain from Judge Russell. Is there a published district court opinion by Dan Russell that you're relying on? Yes, I think there is. It's in our brief. I don't have the site here. I don't have you brief in front of me. That's fine. I looked to try to grain, but I did not look at a district court opinion. Go ahead. But the final factor, which is stated and abandoned other cases that subsumes all the other factors is sovereign immunity. The MTC failed to present to this court the voluntary involcation principle, which apparently is a principle, important principle. Slice the case. This is the case. I'm gonna talk to you in a minute about this. This court's own opinion. Galapagos versus Board of Regents. U. S Supreme Court decision of 2000 and two that discussed this principle in great detail. Removal by state voluntarily invokes federal court jurisdiction and waives its sovereign immunity. It also failed. We're not talking about sovereign immunity. There are case law that say we analyze sovereign immunity and citizenship. Uh, similarly, alter ego status. Similarly, but 11th Amendment, uh, you can't raise sovereign immunity as a defense. What we're worried about here is what is the citizenship of this defendant, which is not the same thing and is not waivable, it seems to me. It is way. I disagree. Uh, again, cases not on whether they're sovereign immunity or not. You have some heavy lifting to carry that across the finish line. I think it's not a case all that you're relying on is the 11th Amendment case law. Yes, your own decision of 2000 and five Myers versus state of transportation, state of Texas and Texas Department of Transportation, in fact, held the same thing. And this court went through a long analysis looking at subject matter jurisdiction. That was the issue there. Did did Myers have subject matter jurisdiction? Also, that was a federal question case. That was not a diversity case. And the issue of the agency there wasn't relevant. Um, and so you had jurisdiction. The issue is whether sovereign immunity apply. Do you have any diversity case where you're looking at citizenship where you have this waiver issue? Your own decisions says it applies across the board, whether it's federal question or a diversity of citizenship. It doesn't make a distinction. Your case in Myers didn't make that distinction at all. Matter of fact, this court said it's broad brushed. Uh, the question was brought up. Does Myers is it limited to federal question? Is it limited to the facts of that case? And this quote from this case, this this court says, Although the Supreme Court and Lapidus circumspectly did not address any issue unnecessary to his decision, we believe that Lapidus interpretation of a voluntary invocation principle as including the waiver by removal rule applies generally to any private suit, which a state removes the federal court. There is no evident basis in law or judicial administration for select severely limiting these general principles. So to answer your question, there is no case that says, well, this principle relies only on federal question jurisdiction. It applies federal question or diversity across the board and MTC and it's brief. It relied on sovereign immunity as a bar to the fed to the diversity of citizenship. In this case, that was what they were briefing, and now that's taken away by this voluntary invocation. So that, and I think an independent basis of the Department of Transportation, that is not an alter ego of the state. Is this court subject matter jurisdiction? I don't see it as a closed question. It just is out there and has not been changed and has not been cited or distinguished by the MTC. So that's our position on jurisdiction. I haven't heard all right rebuttal, but if I may, I will switch over and go to my merits unless the court has questions. All right, press ahead, right? The issue in the case, the main case of the proper interpretation of a statute governing the height of science and outdoor advertising 49 23 9 to be and the identical regulation. We contend there is no doubt that the statute and the regulation are ambiguous, cannot be reconciled, cannot be effectively applied. How can two contradictory sentences exist in the same statute? It can't. I prepared for the court a demonstrative exhibit, which shows it came from page 11 of our brief, and it shows the statute as it applies on this point, just those subsections. It gives you the language that we're talking about. What one sentence, the 2008 amendment, give us this other sentence in the 2003 original take us away. The old language in 2003 says no signs in the state of Mississippi no matter when erected can exceed 40 feet. Period. There's no qualifications. There's no exceptions. That language came up with an amendment in 2008. Billy use that only signs erected after April 15 2008 are limited to 40 feet. Signs erected before that day have no such limit. Ambiguity creates confusion and doubt for the sign owners and sign regulators. Let's say that. Let me ask you to define the ambiguity for me. It seems to me that what was adopted in 2008 has surplus language in it. No sign shall exceed 40 feet. Any sign after a certain date cannot exceed 40 feet. That to me is a redundancy. Is that enough to create an ambiguity and which Texas on Mississippi law into cannons of construction? And if so, why is that ambiguous as opposed to just somebody restated something? Well, they're contradictory. It's not just a restatement. The fourth contradictory. It didn't say only is the problem. It didn't say only those signs erected after a certain date shall not exceed. So it's not contradictory in that extent. I mean, keep working with it, but that's that's a hurdle. Mr. Mr. I can't see how you could read it any other way as being only those erected after April 15th. Yeah, it does not have the word only in it, but when one phrase says no signs may exceed 40 feet and the other one says signs erected after April 15th may exceed 40 feet. I don't know how you don't put the word only in there in your mind. Now, it's not a brilliant draftsmanship, which is part of the problem here. And as I said, if I'm a buyer of a sign or I'm a regulator and I'm going to apply this language to buy a sign or to grant a permit for a sign, which language do I use? Which phrase do I go to? Do I do I go to the first phrase or the second phrase? It depends on the whim of the regulator, as it did in this case. If it's ambiguous, as you said, we apply the terms of the we apply the canons of construction. We ascertain the true intent of the legislation support a construction that purges a statute of any. Invalidity, absurdity or unjust equality. So this court is bound to apply a determination that cures this defect. I cited Mississippi Supreme Court case of Missou Bay Gaming Commission versus Imperial Palace, where the court said legislative intent as an aid to statutory construction, although often elusive to the unaided vision, remains nevertheless opposed to our guides. We are not to construe clarity, but absurdity out of obscurity, but intent out of inconsistency. District Court erred by finding no ambiguity and not applying the rules of construction. I noted that in the first time we were up before this court and Judge Barola, he stated on the record in motions for summary judgment that he didn't want this case. He didn't want to interpret this statute, and so he found any way he could. Last time he found that there was subject to principles, canons of construction or otherwise, that we could even look at an affidavit of somebody like Senator Hughes, former Senator Hughes. And my response is, why not? There's no objection. Because we need case law under federal jurisprudence. We look at what Mississippi Supreme Court has said about the allowance of that. The only case I vaguely remember is perhaps one dealing with casinos back 20 years ago, and some affidavit was introduced of some explanation of what legislators were up to, and I don't think it was accepted. But regardless, do you have a case that allows this sort of single, I mean, very convincing that that's what Senator Hughes was trying to do? But what case do you have that says Mississippi would look at that? Well, I have no case because it has not been challenged. MTC did not challenge it, did not challenge his affidavit, so I didn't have to cite a case argument. I'm aware of the general principles that say that you can't, one legislature cannot testify as to what the intent of the whole legislature was. But Senator Hughes did not do that. He testified what his intent was, why he offered the amendment, the background of that, what the ambiguity was in the statute, and from there, he testified why it, and it did the leaving of the one sentence in there does not comport with his intent. It's all by his intent. So the reason I don't have a case is it was never challenged in my Rule 56 motion. Personally, Judge. All right, Mr. Aber, were you able to, for the most part, make your point on the merits or no? Yes, I think so. My time is up. I want to reserve five minutes for rebuttal on both the motion and the case in chief. All right, well, you're good on your rebuttal time. All right, let's hear from Ms. Rucker. Good morning, Your Honors, and may it please the court. My name is Candace Rucker, and I represent the Mississippi Transportation Commission on behalf of Mississippi Attorney General Lynn Fitch. The court should remand this case to the district court for lack of subject matter jurisdiction with instructions to remand the Harrison County Chancery Court. Alternatively, if the court finds that subject matter jurisdiction is proper, the judgment of the district court should be affirmed. As Judge Stewart has previously noted, the issue of subject matter jurisdiction is a threshold issue that the court must address before turning to the merits. It's, as the Supreme Court has noted, a flexible and inflexible requirement, one that is without exception. And so I will turn to the issue of subject matter jurisdiction first. As the court is aware, there are two potential avenues for obtaining subject matter jurisdiction that are at issue in this case, one being federal question jurisdiction, and the other being diversity of citizenship. I won't devote much time to the issue of federal question jurisdiction because both parties agree that there is no federal question apparent on the face of Lamar's complaint. I will note for Your Honors' benefit, however, that even though the complaint arises under state law, it could, under Grable, satisfy the requirements of federal question jurisdiction if it meets certain elements. But this case does not satisfy those elements. Namely, the federal issue that was identified by MTC in its notice of removal is not substantial, nor is it disputed. There is no dispute of federal law in this case. So diversity, excuse me, federal question jurisdiction is not satisfied, and with the court's indulgence, I'll Now, as alluded to by Judge Southwick during Lamar's argument, the issues of sovereign immunity and diversity of citizenship are distinct. We noted in our motion to remand that the question of remand turns on whether MTC is an alter ego of the state of Mississippi. The Trady Grain case that we've discussed already says the essential question is whether the state is the real party and interest in the lawsuit. Now, there are six factors for determining whether an agency like MTC is an alter ego of the state, and those six factors are the same for determining whether MTC is entitled to sovereign immunity and whether it is a citizen for purposes of diversity jurisdiction. But the two things, yes, Judge? Excuse me, Ms. Rucker. One of the things Mr. Herbert said in Myers that he pulls out of Myers, and he's fairly correct, good lawyer that he is, there is no distinction made in the use in Myers of Lapidese or however that Supreme Court opinion name is now, doesn't make that distinction. I mean, you certainly are pretty far along in saying that these are separate issues, but what do you make of how this court precedentially in Myers has already dealt with this? Is there anything there that we need to be, well, no, of course. It seems to me there's some things in Myers that should concern us in just the way the court articulated how to deal with this. Do you have any response to Mr. Herbert's use of Myers? Yes, Judge. As you previously noted, Myers concerns the grant of federal question jurisdiction as the basis of this court's subject matter jurisdiction and addresses the issue of sovereign immunity separately. Now, I'm not here to contest the fact that by removing the case to federal court, MTC waives its sovereign immunity from suit. I can't speak, of course, to the waiver of sovereign immunity as to the issue of liability, but the Supreme Court as early as 1929 in the case of State Highway Commission of Wyoming versus Utah Construction Company has said that no consent by the state, and this is a direct quote, to affect the question of diversity jurisdiction. So while a state may submit itself to the jurisdiction of the federal court in a sovereign immunity context, the state cannot manufacture diversity of citizenship simply by removing the case, even if it's erroneous, which we, which we candidly admit. Counsel, this all came up fairly quickly. Neither side has had a lot of time to brief it, but it seems to me the issue on waiver of diversity is the same whether it's, whether it's the state or whether somebody else can. A non-diverse party, which creates jurisdiction if it's diverse, create jurisdiction by not raising that it's not diverse or by misstating whether it's diverse. Anyway, you can move on, but that is a, it seems to me where this answer really lies is can diversity be waived, not by the state, but by anybody? Your honor, diversity of citizenship is not something that can be manufactured or waived by any party, regardless of whether they are a citizen of the foreign state. And I draw the court's attention again to that 1929 Supreme Court case, which has firmly established that diversity is not an issue that can be waived. And there is a line of district court cases around the country that address the issue of waiver of sovereign a state or its alter ego may waive its 11th Amendment privilege, but cannot create diversity jurisdiction. And that's, that's a line of cases. Let's hear about alter ego. That seems to me that's a tougher piece here. Yes, Judge. The, as I noted previously, the analysis for determining whether an agency like MTC is an alter ego of the state turns on a six factor test that this court first announced in Trady Green and subsequently refined in the case of PYCA Industries versus Harrison County Wastewater Management District. Of those six factors, MTC undisputedly satisfies four factors for arm of the state status. The first two factors are whether the agency may hold a new property and whether it may sue and be sued in its corporate name. And we candidly admit that MTC can hold a new property and it can sue and be sued. But this court has said in a typical situation, quote, some factors will suggest that the agency is a citizen while others will just as strongly suggest that the agency is a mere alter ego. So this is a true balancing test and the balance of the remaining factors strongly indicates that MTC is an alter ego of the state of Mississippi. What do you say about Mr. Mr. Herbert argued vehemently that, you know, you have a separate board that's elected, not subject to state's regulation. You can sue and be sued. And he alluded to other things on your website and so forth that suggest it as an independent body and not an alter ego of the state. So what do you say to those arguments that he made? Judge Stewart, in Trady Green, this court said that the most important factor is how the agency is characterized by statute and by case law. Now, Mississippi Code Annotated Section 6512 characterizes the Department of Transportation as a state agency and MDOT is the executive arm of MTC. Importantly, also on that factor, this court and the district courts treat MTC as an arm of the state for I know of no case, I've not been able to find a case, finding an agency entitled to sovereign immunity and also a citizen of the state for purposes of diversity jurisdiction. So the fact that this court as late as 2019 in the Bay Point Properties case has called MTC an arm of the state should be dispositive of this issue. But in addition to how the statutes and the case law characterize the agency, we also have the factors of whether the agency exercises independent management authority. The code section that I've alluded to previously and that Lamar's Council has alluded to is Mississippi Code Annotated Section 6511 and its subsequent sections, which provide that MTC's executive director provides an annual report to the legislature and the governor detailing the work of the commission and providing a statement of expenditures. Also, the appointment of the executive director by the commission requires the advice and consent of the Senate. So it cannot be said that this agency exercises this great deal of local autonomy. The final factor is this a straight up legal question? Is this something that has not been raised before that the Fifth Circuit panel ought to be resolving or is it in the wheelhouse of a district judge? Your Honor, this is something that the Fifth Circuit has resolved and can resolve here today. In the case that I previously mentioned, Bay Point Properties versus Mississippi Transportation Commission, which is 937 F3rd 454, this court held that MTC is an arm of the state for purposes of sovereign immunity. Because those analysis are so similar, in fact, overlapping to a great degree, this panel can comfortably find that MTC, again, is an arm of and thus not a citizen for purposes of diversity jurisdiction. As to the final two trading grant factors and what I consider to be perhaps the second in importance behind how the statute and the case law characterize the agency is whether the agency is funded by the state or is financially independent. There is no dispute given the statute and MDOT's appropriations bill that the funding for MTC comes from the state treasury. In fact, Code Section 65.1.111 says all monies from any source provided by law shall be covered and paid into the state treasury. And finally, Your Honors, another important factor is whether the agency is concerned with statewide rather than local problems. MTC's executive director bears full and ultimate responsibility for matters relating to the construction and maintenance of highways across the state of Mississippi. So this is not purely a local issue. This is a matter of statewide concern that MTC is legislatively responsible for handling. Because MTC is an alter ego of the state of Mississippi, it is not a citizen of the state for purposes of diversity jurisdiction. There is thus no subject matter jurisdiction. This case should be remanded to the district court with instructions to remand to Harrison County Chancery Court. If the court has... So, I mean, it's not dispositive, but it is a fair point that whatever the circumstance is on September the 2nd of 2020, it's the same thing when this case was lodged way back when Mr. Herbert seeks to, you know, kind of put a spin, so to speak, on Judge Garola wanting to get a case and all that. I'm not commenting on that. But my point is that the same points you're urging now on September the 2nd and three days ago, nothing has changed in the apparatus of the state, the setup of the state, the board, the electability, even the cases cited. Nothing. Absolutely nothing. There's been no intervening event by the legislature, nothing that has changed since this case got started. So, why is it the case that you and MTC are so adamant and so assured that you're in the wrong place now, though you've been here and come to the Fifth Circuit before? So, what mushrooms out the obvious 900-pound elephant of no jurisdiction on September the 2nd that was so hidden before? And I don't mean that as a rhetorical question at all. Your Honor, MTC candidly admits that it made a mistake in removing this case to federal court. There was no federal question jurisdiction in the first place, and there's no subject matter jurisdiction. But what happened on our end, and just to speak very frankly with the court, is we were preparing for this appeal, this oral argument, and mooted the case, and different attorneys looked at the briefs. A different set of eyes often provides the benefit of clarity, and that's exactly what happened in this case. The attorneys who mooted the argument realized during that process and through the process of reviewing the record brief, there was no subject matter jurisdiction. And our duty of candor to this court required us to call that to the court's attention as soon as it became apparent to us, and that's exactly what happened. And you yourself, Judge Stewart, previously noted that this is not an issue that can be waived or conferred by consent, and it's something that the court has to look at on its own, on its own motion, because again, it's a threshold issue. It's a very inflexible, rigid threshold issue. Right, now there's no doubt, and I'm not trying to throw lawyers under the bus, you know, Fifth Circuit makes mistakes, write that down. So lawyers certainly make, you know, errors, yeah, write it down. Fifth Circuit makes mistakes, may not admit them, but it does. But the point is, I get it, you know, I'm not trying to throw the lawyers under the bus, but it is a little bit disturbing to me, as many lawyers' eyes has looked at this case, particularly since Judge Girola asked, whatever Mr. Herbert says his motives were, Judge Girola asked for briefing on the jurisdictional issue. So this issue's been raised before, and it's back here, just, you know, hard, as I said, you know, to kind of miss the point. It's like dodgeball between, you know, it's an agent of the state, it's not, it's not alter ego, you know, that kind of thing. So, you know, but as you say, I mean, it's our job, we're going to decide it, not based on whether somebody was lulled or not, that's balderdash, I mean, we're going to decide whether we have jurisdiction or not. What do you say, so clearly Lamar is either a citizen of Delaware, where it's, I guess, primary incorporation, or Louisiana somewhere, so on that end of the table, there's no disputing, they're not, for any purposes, a Mississippi entity, right? Right, that's correct. All right. But because Mississippi, the Mississippi Transportation Commission, Your Honor, is an alter ego of the state, it is not a citizen for the jurisdiction, and so it's the state's position that the case should be remanded. And I'd also like to note, Your Honor, that the 11th hour filing of the motion to remand is certainly not advantageous for NTC, but we did it because it was the right thing to do, and we had a duty of candor to the court, and we hope you will take that into account in deciding the case. Oh, we're not going, we're not going to hold it against you, that's why I didn't continue, y'all wanted to continue. If you had a motion to dismiss, I would have signed that in a heartbeat, but it wasn't to dismiss the case, it was to kick the can down the road for three more judges to have to deal, you know, with this issue. That's why it wasn't continued, and it's here, we're going to decide the jurisdictional issue. But your position of the state is that NTC is an alter ego of the state of Mississippi, and that this case turns on diversity of citizenship, of which there is none. Is that your view? That is correct, Judge. Okay, just want to make sure. Ms. Rucker, can I take you to the merits of the time that you have left? It does seem to me that the Senator Hughes affidavit is probably exactly correct. Some mistake was made when this legislation was adopted, it ended up saying something it shouldn't have said. Where are we on interpreting that statute? Well, Your Honor, I don't necessarily think that there was a mistake in adopting this legislation because it's been approved by the legislature several times in its current form. I'd like to note just at the top, based on Mississippi principles of statutory interpretation, that there's no need to discuss the legislative intent if the statute itself is plain and unambiguous. And it's our position, of course, that the statutory language is just that, it's unambiguous. The first sentence of the contested section, which is the across-the-board 40-foot limitation, provides a maximum height for sign structures regardless of the date they were built. Now, the second contested sentence complements the first by simply providing guidance in measuring signs erected on or after April 15, 2008. So by its plain terms, the second sentence doesn't conflict with the 40-foot height limitation, it merely allows the measurement to be taken from the site where the sign is placed rather than the height of the roadway. Now, in its reply brief, Lamar has made a lot of the issue that there's no measurement in the statute for measuring signs erected before April 15, 2008. But I would like to note in MDOT's regulation, MDOT says that it measures all signs regardless of the date of construction. And of course, the legislature is perfectly authorized to legislate incrementally. And so MDOT has simply taken it upon itself to adopt the metric that was in the statute for signs erected after April 15, 2008 and applied them across-the-board to all signs. That doesn't do anything to frustrate the fact that the first sentence is as plain as day. There is a 40-foot across-the-board height limitation for all outdoor advertising signs erected in the state of Mississippi. But even assuming the language of the statute suffers some ambiguity, the district court's decision is still correct. Legislative history reveals the true intent behind the statute in its current form. According to the Mississippi Supreme Court, whatever the legislature says in the text of the statute is considered the best evidence of legislative intent. And this, Judge on the height of sign structures. And as Lamar points out in his briefing, many of the now-existing 40-foot-plus signs were erected during that time period. But Lamar candidly admits in its briefing several times that the section was amended in 2003 to include an across-the-board limitation of 40 feet in height for all sign structures. Sign number 5821, which is the subject of this became non-conforming when the 2003 amendment was passed. Now in 2008, the legislature retained this across-the-board limitation. Sign 5821 remains non-conforming because the 2003 enactment did not change in 2008 with respect to sign height. And again, Your Honors, Lamar admits that the legislature has had two chances in 2015 and 2016 to amend this language but has declined to do so on both occasions. So it's the state's position that the legislature has spoken, the statute is clear and unambiguous, and if subject matter jurisdiction is proper, the judgment of the district court should be affirmed. Thank you. Let me ask, Judge Stewart, with your indulgence, let me ask, I think Mr. Herbert was telling me that the state has now challenged the validity of using affidavits of legislators. It's just in this case, it shouldn't have been used. Is that a fair recollection of what's happened in the case so far? Not you, but previous counsel have not challenged whether it's proper under Mississippi law to use an affidavit of a legislator? Yes, Your Honor. The issue of Senator Hughes' affidavit was not raised by MTC at the district court, but it makes no difference if that argument wasn't raised at that juncture because this court may affirm the judgment of the district court for any reason supported by the record. The argument that, I'm sorry, Judge. You're past your time, and I'm not trying to extend it for everybody any longer, but thank you, Ms. Rucker. Thank you, Judge. No, don't feel rushed not to have your question. If you satisfied your question, Judge Salford. Okay, we're not. I just want to know if it had been raised before. All right, we're not running to go anywhere. Okay, last question for you, Ms. Rucker, not necessarily on the clock, but not presuming what the end product of all this is. Yesterday, we got the motion from Lamar for fees, costs, etc., etc. Should we expect or is it a desire for you to file an opposition or file a response to it? I would expect to file an opposition. Okay, all right, so that's forthcoming? Yes, sir. All right. Okay, just want to be clear. All right, we're back to you, Mr. Herbert, for rebuttal. Yes, sir. Thank you, Your Honor. I want to take things in reverse order. First of all, the affidavit accused, not only was it not challenged, but again, what I know of Mississippi law he complied with, he did not testify in his affidavit why the legislature voted for this or that amendment. He gave a legislated history of him drafting and why he drafted it and what he intended by that. And he said it was a mistake not to delete the first line. Let me clear up the motive of Judge Garold. I just put that out there for the fact that he overlooked here clear ambiguity. I don't know why he didn't find ambiguity, but he did not want to interpret this statute, and he indicated that in the record. Let me take a moment, though, and I want to make this point very clear about general of the federal question versus citizenship. Uh, and regard to this court's own decision in Myers. The issue and which and then trade again was the six factors and the altered ego and went through those and analyze those for the state Port Authority. But in the end, it was the sovereign immunity of the state Port Authority that decided the issue. There are other or even if you do that, sovereign immunity subsumes those factors in determination of diversity of citizenship. Your decision in Myers makes it abundantly clear in several different places. We are not limiting this holding of the invocation of jurisdiction to federal question or any other cases, whether it's 88 or whatever. It's it's. You said here the general applicability of the voluntary invocation principle and the waiver by removal is demonstrated by its history and these cases that you cited in that Myers decision long after this 1929 decision that stated probably a general rule at that time. But this is the law as announced by this circuit that the state can waive its sovereign immunity, which in effect, as it did in Myers, waves its diversity of citizenship objection and creates diversity of citizenship. I don't know how you could come to any other conclusion by looking at the Myers case. It goes to great extent to say no, that's not what was meant. And I guess I'll conclude with a quote out of Myers that to me is not impugning bad motives to this state in this, but where it quoted. Justice Kennedy. And he said, and this is a rapid ease the Lapidus case. In permitting the belated assertion of the 11th Amendment bar, we show states we allow states to proceed to judgment without facing any real risk of adverse consequences. Should the state prevail, the plaintiff would be bound by principles of race to Dakota. If the state were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal. And that's where we are here is last minute. We don't have diversity of citizenship because of by this court. I think the judgment of the district court is an error. It should be reversed. The interpretation of this court should eliminate the first sentence of section two and apply the common sense. Let me do one thing that talked about the measurement, the it's only in there for metric as Judge Girola said. At first of all, it directly contradicts Senator Hughes affidavit. That wasn't why it was put in there, but it makes no sense. Why would you have a measurement for science to determine if they're 40 feet or not? If there's no limitation of 40 feet, which the second phase we're talking about takes away, there is no limit there. So why would you have a, what would you measure? There are signs on the Gulf Coast that are a hundred feet in height. You don't need to measure the 40 feet on that. So it, it, it only makes common sense. If you and go with one inclusive clause that says signs after April 15, 2015, do not, before that date, do not have to meet the 40 feet height. So unless the court has more questions, I'll conclude there. All right. Thank you, Mr. Herbert. Thank you, Ms. Rucker. Ms. Rucker, your response to the motion yesterday filed about fees is due not later than the close of business this coming Friday, September the 4th. Can you get it there? Yes, sir. We'll get it done. All right. Then hopefully we'll have all the paper in this case, at least at that juncture. All right. Interesting case, counsel, about a sign on the roadway, but at any event, you can't beat this job, the variety of topics. So we appreciate your ardent advocacy in brief motions and otherwise. You're excused with the thanks of the court. Thank you, Judge. Thank you.